UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PAULA HARRIS,<br>    PLAINTIFF<br><br>VS.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>    DEFENDANT | CASE NO. 1:08-CV-00325<br>(BECKWITH, J.)<br>(HOGAN, M.J.) |

## REPORT AND RECOMMENDATION

Plaintiff filed her application for disability insurance benefits (DIB) in July 2005 and supplemental security income (SSI) in August, 2005. She alleged an onset date of March 2, 2004. Plaintiff's applications were denied, both initially and upon reconsideration. Plaintiff then requested and obtained a hearing before an Administrative Law Judge (ALJ) at Cincinnati, Ohio on October 24, 2007. At the hearing, Plaintiff, who was represented by counsel, testified as did Medical Expert (ME), Arthur Lorber, M.D. and Vocational Expert (VE), Robert E. Breslin. Following an unfavorable decision in December, 2007, Plaintiff processed an appeal to the Appeals Council, which refused review in April, 2008. Plaintiff then filed his Complaint with this Court in May, 2008, and sought judicial review of the final order of the Defendant Commissioner denying her benefits.

## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ erred in several respects. She first argues that the ALJ gave insufficient weight to the opinions of treating physicians, Drs. Atasoy and Cook. Plaintiff's second argument is that the ALJ erred in evaluating her credibility and subjective reports of pain. Third, Plaintiff contends that the ALJ failed to find a closed period of disability. Fourth, Plaintiff argues that the ALJ erred in relying on the responses to an improper hypothetical question.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff stated she was 31 years old, 5' and normally weighed 120 lbs. At the time of the hearing, she was eight months pregnant. She is right-handed and single. She holds a college degree, a B.A. degree in Business Administration. Plaintiff's last employment was in medical sales for Quest Diagnostics.

Plaintiff testified that she could not work due to an injury she suffered on March 2, 2004, while placing lab boxes into the trunk of her car. Her arm hyper-extended and caused a burning sensation that ran down her arm until she had surgery. Plaintiff testified that despite surgery and multiple sessions of therapy, she simply has not recovered from this injury. Plaintiff further testified that she has burning and numbing pain from the top of her shoulder down to her fingers, and she also described problems with her neck, thoracic spine, and cervical spine. She also described hot and cold spots in her arm and trouble grasping and holding things because her fingers will freeze up. The amount of discomfort she feels in her arm will depend on her use of the arm.

Plaintiff testified to her daily activities. She stated she rests a lot and reads books. She sits up or lies down to read and has a device that holds the book. She has trouble driving but can drive for about 1 hour without pain. She cooks minimally, does some laundry, dusts and will go to the grocery store if someone goes with her. She cannot carry grocery bags, vacuum, take out the garbage, or do yard work. She used to knit and dance, but she testified she cannot use her hands and arms for that now. She can use a computer for about 30 minutes and then has to stop for several hours before she can use the computer again. She can still use her right hand for combing her hair, brushing her teeth and eating.

Plaintiff estimated she could lift 10 pounds with the left hand, but this will generally result in pain on the right. Plaintiff is right hand dominant, but testified she can use her right hand only minimally. She estimated she could lift about 5 pounds with both hands. Plaintiff further testified that she can use her right hand to lift about 5 pounds for 5-10 minutes. She stated she could lift about 5 pounds for 15 minutes with the left hand. She can write for 10-15 minutes at a time, for a total of 30 minutes per day. She takes a break for 15 minutes before

writing again. Plaintiff acknowledged that she can pick up a coffee cup, button, zip, and sometimes can open a jar. She can open a door, but if it is heavy, she uses her left hand. She has no trouble walking, sitting, or standing, and she can bend over and climb stairs. Plaintiff further testified she can reach within her arms limit. She cannot reach for heavy objects and cannot do this motion continually. She gets burning sensations in her neck if she holds her neck down for more than 10 minutes, and she will have to stop for one hour before she can bend her head down again. (Tr. 432-53).

## THE MEDICAL EXPERT'S TESTIMONY

The ME summarized Plaintiff's treatment records. (Tr. 455-58). The ME testified that testing has typically been normal. The EMG, x-rays, and MRIs have shown no significant abnormalities. Based on his evaluation of the medical record, the ME found that Plaintiff does not meet or equal listing 11.14, peripheral neuropathy with regard to her right upper extremity. He continued that her impairments, neither singularly nor in combination, equaled or met any listing. The ME further testified that Plaintiff has no significant limitations from her impairment. He said there is no medical basis for the physicians' limitations or for the limitations described in her testimony. (Tr. 458-62).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ's hypothetical question to the VE assumed an individual who has the residual functional capacity to lift, carry, push, pull up to ten pounds occasionally and five pounds frequently. The hypothetical individual would have no limitations in terms of walking, standing, or sitting, but could do no more than occasional stooping, kneeling, and crouching or climbing of ladders, ropes, or scaffolds. The hypothetical individual could occasionally climb ramps and stairs, but she could not work on ladders, ropes, or scaffolds. Lastly, the hypothetical individual could not reach above shoulder level with her right arm, work at unprotected heights, or use

vibratory tools. The VE responded that this person could perform her past jobs as an office manager and as a sales representative for an employment agency as those jobs are customarily performed and described in the *Dictionary of Occupational Titles*.

The VE opined that Plaintiff could perform a representative number of unskilled, sedentary jobs, such as order clerk, assembler and inspector. If the hypothetical person had a restriction of no more than frequent handling and fingering, she could still perform all the jobs already identified.

If the hypothetical individual she could only perform occasional handling and fingering functions, she could not perform any of the jobs that the VE identified. (Tr. 463-70).

## OPINION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ concluded that Plaintiff has severe impairments of "right thoracic outlet syndrome, status post 7/19/04 surgery/right shoulder bursitis; myofascitis." The ALJ found that no impairment or combination of impairments met any listings. The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform the requirements of work activity, except as follows: She can lift/carry/push/pull up to 10 pounds occasionally and up to 5 pounds frequently. She can only occasionally stoop, kneel, crouch, and reach above shoulder level with the right upper extremity. She should not use vibratory tools, crawl, or climb ladders/ropes/scaffolds. She can perform no more than frequent fingering and handling. Plaintiff has no limitations on her ability to sit, stand, and/or walk. The ALJ next found that Plaintiff is capable of performing her past relevant work as a sales representative, both as customarily performed and as the Plaintiff actually performed those jobs. This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible for DIB or SSI. (Tr. 13-23).

# MEDICAL RECORD

Plaintiff injured her right shoulder in March 2002, while lifting heavy boxes. (Tr. 214-215). Examination by orthopedic surgeon, Chad E. Mathis, M.D., revealed laxity and impingement of the right shoulder. Id. Daniel Meece, M.D., noted, that by December 2003, her pain was gone. (Tr. 223).

Plaintiff re-injured her shoulder on March 2, 2004, after she hyperextended her arm pushing boxes into her company car. She reportedly heard a popping noise and then felt a sudden burning sensation from her shoulder to her fingertips. (Tr. 223).

Plaintiff was evaluated in the emergency room at the U.K. Medical Center on March 2, 2004 for a "2-month history" of right shoulder pain. She stated she injured her arm two months prior when raising her arm to wash her hair. Examination revealed no edema, full range of motion with no pain, and no pain over the AC joint. Plaintiff had good sensations and was neurovascularly intact. There was only minimal tenderness over the anterior aspect of the shoulder, and x-rays showed no fracture. (Tr. 259).

Plaintiff was seen again by Dr. Mathis on March 4, 2004, when he ordered an MRI. (Tr. 214). An MRI of Plaintiff's right shoulder taken March 8, 2004, revealed reactive fluid in the subacromial space. Otherwise, the MRI was normal. (Tr. 211-12, 256-57). On March 17, 2004, Dr. Mathis' examination showed less blood flow to right arm and a positive Allan's test finding, which led to a diagnosis of thoracic outlet syndrome. (Tr. 209, 272).

Plaintiff began treating with Erdogan Atasoy, M.D. in May 2004. Upon examination, Dr. Atasoy found Plaintiff's right hand to be slightly cooler, but there was no swelling or atrophy. Plaintiff had negative Tinel's tests, no epicondylar tenderness, and a quite tender right scalene and right subcoracoid area with some pops and cracks. Tapping and compression caused a lot of pain to the right upper arm. (Tr. 272). Dr. Atasoy diagnosed acute thoracic outlet syndrome and injected her right upper pectoral trigger points with remarkable improvement. Id.

Plaintiff had surgery on July 19, 2004, after which she had "much improved" right hand, arm and shoulder symptoms. (Tr. 273). In September 2004, Plaintiff reported symptoms suggestive of right shoulder instability, so Dr. Atasoy referred her to Dr. Hasan.

On October 21, 2004, Plaintiff was consultively examined by orthopedist, Samer S. Hasan, M.D. Plaintiff reported that she was pleased with the thoracic outlet surgery, but she still had pain in her shoulder that limited her ability to use her arm. Examination revealed slight glenohumeral crepitus and slight evidence of deltoid atrophy. There was no evidence of gross asymmetry. Plaintiff's active motion was well preserved, despite pain and slight scapular dyskinesis. Plaintiff had mildly positive abduction tests for impingement, but strength testing showed well-preserved deltoid strength. Plaintiff had some strength deficits with supraspinatus, rotation, and subscapularis strength testing. X-rays of Plaintiff's shoulder showed no significant glenohumeral arthrosis, no upward migration over the humeral head, relative to the acromion, but some slight AC joint arthropathy. Dr. Hasan diagnosed impingement syndrome and recommended "a very conservative treatment program, emphasizing anti-inflammatories, activity modification, and physical therapy." (Tr. 278-80).

Plaintiff saw Dr. Hasan for follow-up on November 18, 2004. Dr. Hasan reported that Plaintiff appeared to be responding slowly to physical therapy. She had noticed improved strength, and that the burning sensation down her right arm had dissipated. However, she noted increased pain in her left arm. After examining Plaintiff, Dr. Hasan opined she had some posterior capsular contraction and poor parascapular muscle coordination and overall strength, probably exacerbated by surgery. Dr. Hasan recommended further physiotherapy. (Tr. 277).

When Plaintiff saw Dr. Atasoy again on November 30, 2004, she reported the physical therapy increased her pain and Dr. Atasoy advised that she could not yet work. (Tr. 267). In February 2005, Dr. Atasoy found significant limitations on postural activities, head and neck movements, and lifting. Dr. Atasoy opined Plaintiff was incapable of working. (Tr. 284). On May 3, 2005, Dr. Atasoy reported right shoulder pain radiating to the right arm and numbness and tingling in two fingers on the right hand. Id.

On May 17, 2005, Plaintiff was consultively examined by neurologist, Richard J. Lederman, M.D. at the Cleveland Clinic. Plaintiff reported severe "deterioration" in both arms with diminished grip strength and more pain. She said she had decreased feeling in the right arm, tightness of the fingers, hot and cold spots on the hand and arm, and burning and tingling. She described similar symptoms in the left arm, left sided headaches, and episodes of sweating.

Examination revealed normal muscle tone and bulk. Dr. Lederman reported, "I do not see any hint of muscle atrophy and, indeed, do not even see the indented area in the region of the right upper deltoid." Dr. Lederman further reported there was no weakness of any muscle group in the upper limbs, although there was some "give way" weakness. Dr. Lederman concluded that, "she has some symptoms that might at least raise the questions of complex regional pain syndrome." Dr. Lederman referred her to pain management. (Tr. 315-17).

Plaintiff was examined by Sung Ki Min, M.D., a pain specialist, on June 3, 2005. (Tr. 310-14). Dr. Min noted that Plaintiff's symptoms were "intermittent," and her pain was 3/10 on her best day and 7/10 on her worst day. Plaintiff reported her pain was relieved by a Fentanyl Patch. Examination revealed minimally decreased muscle mass over the right deltoid and right thenar eminence (the area of the palm of the hand at the base of the thumb). She had 5/5 strength of the bilateral upper extremities, intact sensation to the upper extremities, and mild discomfort to light touch over the right shoulder. Plaintiff had no evidence of muscle atrophy. Dr. Min treated Plaintiff with four pain block injections throughout the summer. (Tr. 302-09).

R.K. Brown, M.D., completed a residual functional capacity evaluation in May 2005. Dr. Brown opined that Plaintiff could occasionally reach and handle on the right and frequently on the left. Plaintiff had "unlimited" abilities for fine manipulation. (Tr. 322-30). Dr. Brown's opinion was affirmed in September 2005. (Tr. 334-43).

On August 9, 2005, Dr. Atasoy continued to note right upper back and pectoral trigger points, which he injected with "very good relief." (Tr. 267).

Plaintiff treated with family physician, Dr. Todd Cook, from September 2005 to July 2007. Dr. Cook assessed chronic pain in 2006 and 2007. (Tr. 362-77). In April 2006, Dr. Cook reported Plaintiff had persistent pain and had not reached maximum medical improvement and could do no lifting with the right arm. Dr. Cook also reported that Plaintiff's thoracic outlet syndrome would prevent her from working. Dr. Cook based his opinion on the bone scan. (Tr. 359-360).

A bone scan from October 11, 2005, showed degenerative changes to her lower cervical spine, but no evidence of RSD (reflex sympathetic dystrophy). (Tr. 386). That same day, Plaintiff also underwent a Venus doppler study, which showed no evidence of deep or superficial

vein thrombosis in the right upper extremity. (Tr. 387). X-ray's of Plaintiff's right and left hands, also from October 11, 2005, showed no evidence of demineralization in either hand. (Tr. 388).

Plaintiff underwent physical therapy with Daniel Lilley, P.T., from January 2006 to September 2007. Treatment consisted of myofascial release, connective tissue manipulation, and stretching. Mr. Lilley reported on January 12, 2006, that Plaintiff had more mobility in her right arm. She had cleaned her house and did not have increased pain except in the right parascapular area. On January 14, 2006, she told Mr. Lilley she felt pretty good, "in fact the best she has felt since the injury." The following day, it was reported that her pain had almost completely disappeared, to the extent that Plaintiff had cancelled an upcoming exploratory surgery. By February, 2007, Mr. Lilley reported that Plaintiff's pain had been reduced by about 65%. Plaintiff's pain level had been a 10 but was at a 3-4 level. Her right arm had been cold. She held her right hand to her body in 2006 but did not do this in 2007. Her headaches were gone, she had rare pain in her right hand, strength was 3-4/5 in the right shoulder instead of a reported 2/5 in 2006. She could use her right hand to feed herself, drive, shake hands, and write. Plaintiff reportedly had reduced her use of Neurontin by at least 50%. (Tr. 399-409).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1),423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix I. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden

of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.,* 667 F.2d 524 (6th Cir. 1981), *cert. denied, 461* U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(C). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen,* No. 876189, slip op. at 4 (6th Cir. Oct. 28, 1988). An impairment will be considered non severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,*773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler,* 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson,* 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's

individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson v. Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson*, 735 F.2d at 964; *Kirk*, 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky* v.

*Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley* v. *Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Nos* v. *Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley* v. *Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

The regulations expressly provide that the responsibility for deciding a claimant's residual functional capacity rests with the Administrative Law Judge when cases are decided at an administrative hearing. *Webb* v. *Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004)(citations omitted). [20 C.F.R. § 404.1546; § 404.1527(e)(2)].

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk* v. *Secretary of H.H.S.* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan* v. *Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky* v. *Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones* v. *Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require ... 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King* v. *Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the

Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky,* 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

## OPINION

Plaintiff contends the ALJ should have accorded controlling weight to the opinions of Dr. Atasoy, her treating hand surgeon, and Dr. Cook, her treating family doctor, in determining her RFC. Plaintiff was treated by Dr. Atasoy beginning May 2004 and he performed surgery in July 2004. (Tr. 272-73). As discussed above, Dr. Atasoy limited Plaintiff's functional ability to less than sedentary work. (Tr. 284).

The treating physician rule, when applicable, requires ALJs to give controlling weight to a treating physician's opinion rather than favoring the opinion of a nonexamining medical advisor, or an examining physician who saw a claimant only once, or a medical expert who testified before the ALJ. *Wilson v. Comm'r. of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004); *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §§404.1527(d)(2), (e), (f), 416.927(d)(2), (e), (f). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Wilson,* 378 F.3d at 544; *see Walters v. Commissioner of Social Security,* 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2).

If a treating physician's opinion is not given controlling weight, it must be weighed under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).

In general, more weight is given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §§404.1527(d)(1); 416.927(d)(1). However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Their opinions, however, are weighed under the same factors as treating physicians' opinions including supportability, consistency, and specialization. *See* 20 C.F.R. §§404.1572(d), (f), 416.927(d), (f).

Plaintiff has not demonstrated that the ALJ applied incorrect standards of law when evaluating the medical source opinions. *See* Doc. 6 at 4-7. She contends, however, that the ALJ's decision is not supported by substantial evidence because the opinions of treating physicians Dr. Atasoy and Cook, along with the state agency reviewing physicians, clearly support a disability finding and are contrary to the restrictions established by the ALJ's assessment of her RFC.

The ALJ did not err by concluding that Dr. Atasoy's extreme opinion was not entitled to controlling weight, because it was based Plaintiff's subjective reports and was consistently contradicted by diagnostic testing and by other physicians' findings. (Tr. 21). Plaintiff argues that Dr. Atasoy's opinion should be accepted because he is a specialist and a hand surgeon. As the Commissioner noted, Plaintiff failed to address the significant improvement in her condition after surgery. *See* Doc. 9 at 13-14. As noted above, Dr. Atasoy performed surgery in July 2004, and reported significant improvement as of August 31, 2004. (Tr. 273). Supporting the ALJ's decision, Dr. Hasan, an orthopedic specialists, reported in October 2004, that Plaintiff

had full range of motion in her right shoulder. (Tr. 279). In May 2005, Dr. Lederman found that Plaintiff was neurologically intact, with no atrophy in her deltoid muscle. (Tr. 315-17). Additionally, Dr. Lorber, the medical expert did not find a physical basis for the restrictions. (Tr. 459). Substantial evidence therefore supported by ALJ's reasons for discounting Dr. Atasoy's disability opinions.

Turning to Dr. Cook, Plaintiff treated with Dr. Cook from September 2005 to July 2007. (Tr. 358-89). In April 2006, Dr. Cook assessed that Plaintiff's thoracic outlet syndrome would prevent her from working. (Tr. 359-360). Substantial evidence supported the absence of objective evidence in light of Dr. Cook's progress notes. (Tr. 362-77). The only objective findings of Dr. Cook that Plaintiff identifies is a finding of tingling and tenderness in her right hand found during an examination conducted in May 2005. (Tr. 267). Dr. Cook also based his opinion on the October 11, 2005 bone scan which showed degenerative changes to her lower cervical spine, but no evidence of RSD. (Tr. 386).

The ALJ assigned the state agency reviewing physicians "little weight" because as he reported, those doctors had no opportunity to adequately consider Plaintiff's reports of pain. (Tr. 21).

The ALJ is ultimately responsible for assessing a claimant's RFC, taking into consideration the opinions of medical sources and other relevant evidence. *See* 20 C.F.R. §§ 404.1527(e), 404.1545. In this case, the ALJ was faced with inconsistent and contradictory evidence. On the one hand, Drs. Atasoy and Cook opined that Plaintiff was unable to perform even sedentary work. On the other hand, Drs. Lorber, Hasan and Lederman opined that Plaintiff was not so limited. In determining Plaintiff's RFC, the ALJ acknowledged these extremes and reasonably devised an RFC for a limited range of sedentary work. The ALJ took into consideration all of the medical evidence of record and reasonably accommodated Plaintiff's impairments by limiting Plaintiff to a range of sedentary work. (Tr. 13-23). It is the ALJ's function to resolve inconsistencies and conflicts in the medical evidence, *see King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984), and the record reveals that the ALJ considered all of the medical evidence in assessing Plaintiff's RFC. Therefore, Plaintiff's first assignment of error is not well-taken and should be overruled.

The second error assigned by Plaintiff's counsel is that the ALJ mis-evaluated Plaintiff's credibility and subjective reports of pain. Plaintiff argues that her testimony does not show she has an ability to work 40 hours a week. In support of her argument, Plaintiff's argues there were objective medical findings showing disabling pain. (*See* Doc. 6 at 8). She also states she has been prescribed strong pain medications to treat her pain. (Id.) As the ALJ noted, in April 2007, Plaintiff had a positive pregnancy test and stopped using medication. Although she, at times, thereafter complained of some pain, she was able to tolerate it without medication. (Tr. 20, 443). In response to Plaintiff's good work record, the Court notes that Plaintiff's testimony reflects she was at her jobs for 6 month, 1 year and "two or three years" (Tr. 436-39) and she applied for disability prior to her 30th birthday. (Tr. 206).

Finally, Plaintiff argues her complaints of chronic pain and her physical limitations are supported by the opinions of state agency reviewing physicians. *Id.* The ALJ's decision to reject these opinions is supported by substantial evidence as discussed above, and therefore, Plaintiff's reliance on such opinions is misplaced. Moreover, the ALJ's determination that Plaintiff's subjective allegations regarding her symptoms and limitations are not wholly credible is fully supported by the record evidence.

The ALJ's decision reflects that he properly considered the required factors in determining Plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c). In light of the ALJ's opportunity to observe Plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

Plaintiff argues in support of her next error that the ALJ should have found at least a closed period of disability. Pursuant to the definition of disability under 20 C.F.R. § 404.1505, Plaintiff argues that she has a period of at least three years of disability from her onset date of March 2, 2004 to February 2007, when her physical therapist found she had more use of her right hand. (Tr. 402-04). Plaintiff fails to cite any persuasive evidence that she was disabled at any time covered by the ALJ's decision. The ALJ concluded,

> [T]he evidence as summarized above does not show a continuing 12 month period of disability. As Dr. Lorber testified at the hearing, testing has typically been normal. The EMG, x-rays, and MRIs have shown no significant abnormalities. Even the bone scan Dr. Cook cites as evidence of the claimant's disability shows no problems. Further, although Dr.

> Mathis and Dr. Atasoy reported some positive findings, other physicians and orthopedists concurrently reported no evidence of instability, no neurological problems, full range of motion, no sensory loss, no brachial plexopathy, no muscle atrophy, and no strength deficits. Dr. Lorber testified that not only does the claimant's impairment not equal or meet a listing, but the claimant also has no significant limitations from her impairment. He said there is no medical basis for the claimant's physicians' limitations or for the limitations described in her testimony. Dr. Lorber said there is no doubt the claimant did not have RSD, but she could have had thoracic outlet syndrome -a diagnosis often based entirely on the patient's symptoms. Dr. Lorber concluded the evidence. does not show a severe medical impairment as defined by Social Security Regulations.

(Tr. 21). The ALJ reasonably concluded that Plaintiff was not disabled at any point covered by his decision. (Tr. 22).

The fourth and last Statement of Error is that the ALJ erred in relying on the answers to improper hypothetical questions to the vocational expert. Plaintiff contends that she was limited to only occasional handling and fingering, yet the hypothetical question to the VE assumed frequent handling and finger. This contention lacks merit because Plaintiff has not shown that the ALJ's assessment of her RFC was based on legal error or unsupported by substantial evidence. As a result, the vocational expert's testimony addressing a hypothetical person with these limitations and abilities, which incorporated the ALJ's residual functional capacity, *see* Tr. 467-70, constituted substantial evidence to support the ALJ's conclusion at step 5 of the sequential analysis. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (citing *Varley v. Sec. of Health & Human Svcs.*, 820 F.2d 777, 779 (6th Cir.1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert....")).

Accordingly, Plaintiff's Fourth Statement of Error lacks merit.

## CONCLUSION

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker*, 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to

direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

Because substantial evidence supports the decision of the ALJ, we **RECOMMEND** that the ALJ's decision be **AFFIRMED** and that this case be **DISMISSED** from the docket of the Court.

Date 9/14/09

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS REPORT & RECOMMENDATION

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).